IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Travis L. Kelly, Sr.,       )
    Plaintiff,           )
                 )
v.                          )       1:08cv433 (TSE/TRJ)
                 )
Mrs. Terrangi, et al.,      )
    Defendants.          )

FILED

SEP - 8 2009

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

<u>MEMORANDUM OPINION</u>

Travis L. Kelly, Sr., a former Virginia inmate proceeding <u>pro se</u>, filed a civil complaint in

the Circuit Court for the City of Chesapeake, Virginia, on August 15, 2007, against the Indian Creek

Correctional Center ("ICCC") and two of its employees, mail room supervisor Mrs. Terrangi and

medical supervisor Mr. Daley, and against ARMR Correctional Health Service ("ARMR") and two

of its personnel, Dr. Jose Armus and Dr. O. Ajumobi. Plaintiff's two-page complaint alleged various

deprivations stemming from his incarceration at ICCC, including claims of negligent medical care,

denial of access to the institutional law library, problems with the handling of his mail, and the

assertion that the well water he was forced to drink caused him health problems and complications.

The case was removed to federal court by defendant Daley, and was construed as an action pursuant

to 42 U.S.C. § 1983.

By Memorandum Opinion and Order dated October 21, 2008 (hereinafter "Order of October

21"), defendant Daley was dismissed from the lawsuit, and plaintiff was directed to particularize and

amend his allegations by submitting a short, detailed statement of background facts describing the

specific conduct of each of the three remaining defendants he wished to sue.[1] Plaintiff also was instructed to address the issue of the timeliness of his claims, and to complete and return an affidavit concerning his exhaustion of the institutional administrative grievance procedure, which was provided to him. Plaintiff was informed that his failure to comply with any part of the Court's Order could result in the dismissal of his complaint.

On November 13, 2008, instead of complying with the instructions contained in the October 21 Order, plaintiff filed a motion for relief from judgment, essentially arguing only that defendant Daley had been wrongfully dismissed. On December 30, 2008, plaintiff submitted a letter motion seeking an extension of time to file his response on the grounds that he was hit in the eye on November 28, 2008, and required surgery for his injury. In addition, plaintiff stated that he had been in segregation "since then," so apparently he was placed in segregated status at the same time he suffered his eye injury. Because plaintiff was directed to comply with the Court's October 21 Order by November 20, 2008, the facts that he allegedly sustained an injury and was placed in segregation on November 28, 2008, were irrelevant to his failure to comply with the Order within the allotted time, as those occurrences took place after the deadline for compliance had passed. Nevertheless, as a matter of grace, the Court allowed the pro se plaintiff a final extension of time until January 30, 2009, to comply with the instructions contained in the Order of October 21, 2008.

---

[1] In a Motion to Amend Bill of Complaint filed on January 29, 2009, plaintiff asserts that he wishes to add the following claims against defendant Daley: "(1) Mr. Daley didn't provide me with adequate medical assistance. (2) Mr. Daley also approved of Dr. Ajumobi's medical treatment on me which cause [sic] me harm." (Docket # 29) Plaintiff's motion to make these amendments to his complaint will be granted, but the addition of these vague and conclusory assertions do not alter the conclusion as fully explained in the Memorandum Opinion of October 21 that plaintiff's claim against Daley is subject to dismissal pursuant to 28 U.S.C. § 1915A(b)(1).

On January 29, 2009, plaintiff filed a Motion to Amend Bill of Complaint and response to the Court's Order of October 21, 2008. In addition, plaintiff submitted a "Petition to Wit Declaratory Judgement," which was docketed as a new case and assigned case number 1:09cv135 (TSE/JFA). Upon review, the "Petition to Wit Declaratory Judgement" named the same defendants and alleged the same constitutional violations as are involved in the instant case, so it appears that plaintiff intended the "Petition to Wit Declaratory Judgement" to serve as his amended complaint in this case. Accordingly, an Order has been entered consolidating case number 1:09cv135 (TSE/JFA) with the instant case, and directing that case number 1:09cv135 (TSE/JFA) be dismissed. Upon review of the "Petition to Wit Declaratory Judgement," construed as an amended complaint,[2] the claims against the remaining defendants must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[3]

## I. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that

---

[2] For ease of reference, the term "amended complaint" when used in the remainder of this Memorandum Opinion shall be understood to indicate the "Petition to Wit Declaratory Judgement."

[3] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

is frivolous, malicious, or fails to state a claim upon which relief can be granted.  28 U.S.C.

§ 1915A(b)(1).  Whether a complaint states a claim upon which relief can be granted is determined

by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  Sumner v. Tucker,

9 F. Supp. 2d 641, 642 (E.D. Va. 1998); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  To

survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct.

1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570  (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id.  However,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to

raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55.  Moreover, a court

"is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct.

at 1949-1950.

## II. Analysis

A. Timeliness

In the Order of October 21, plaintiff was informed that Virginia's two-year statute of

limitations for personal injury claims is applicable to his claims for relief under § 1983, see Wilson

v. Garcia, 471 U.S. 261, 280 (1985), and it was noted that plaintiff had failed to provide the dates

of any of the events giving rise to his claims. Therefore, plaintiff was instructed to address the issue

of the timeliness of his claims in his response to the Order.  However, both plaintiff's response to

that Order (Docket # 28) and his amended complaint fail to set out the dates on which any of the salient events occurred, and plaintiff includes no discussion whatever of the timeliness vel non of any of his remaining claims in either of those pleadings. Plaintiff thus failed fully to comply with the directions he received in the Order of October 21, with the result that it cannot be determined whether this action was instituted within the applicable limitations period, and the amended complaint is subject to dismissal on that basis.

B. Exhaustion

Similarly, plaintiff was directed in the Order of October 21 to complete and to return an affidavit concerning his exhaustion of the institutional administrative grievance procedure, which was provided to him. In his response to that Order, plaintiff explains without meaningful detail that he "attempted to exhaust [his] state remedies but was transferred in [his] last attempt." (Docket # 28) Inferentially, then, plaintiff appears to admit that some or all of the claims he makes in this lawsuit remain unexhausted. However, in contravention of the instructions contained in the Order of October 21, plaintiff's statement was not notarized or filed under penalty of perjury, and is unsupported by exhibits demonstrating plaintiff's exhaustion efforts. Therefore, the amended complaint must be dismissed for plaintiff's failure to demonstrate that his remaining claims have been exhausted. Cf. Woodford v. Ngo, 548 U.S. 81 (2006) (requiring complete exhaustion of correctional facility administrative remedies).

C. Plaintiff's Remaining Claims

Even assuming that plaintiff's complaint was filed timely and his claims were exhausted administratively, this action still would be subject to dismissal, as plaintiff in the amended complaint

5

fails to state a claim for which § 1983 can be granted. In the Order of October 21, it was explained to plaintiff that his claims of negligent medical care, denial of access to the law library, problems with the handling of his mail, and harm due to substandard drinking water all lacked the specificity necessary to state a constitutional claim against any of the named defendants. As described above, the Order directed plaintiff to particularize and amend his complaint to cure those defects, and to describe the specific conduct of each defendant whom plaintiff alleges violated his constitutional rights. However, the allegations plaintiff includes in the amended complaint fail to state a claim upon which relief can be granted against any defendant.

(1) Medical Care

In the amended complaint, plaintiff alleges that he arrived at ICCC with "a couple of month[s] supplies of [his] blood pressure medication,"180 mg. Cardizem, which he was taking once a day. However, a month later, plaintiff ran out of medication, and he was prescribed a generic form of his former drug which "wasn't working." Plaintiff states that his blood pressure "was constantly going up" and he was experiencing unspecified side effects, and after he wrote emergency grievances he was allowed to see medical personnel, and his medication dosage was increased. Plaintiff at that point was receiving 180 mg. Cardizem again, along with .2 mg. of Clonidine twice a day, but he continued to experience elevated blood pressure and side effects. After writing additional grievances, plaintiff again was allowed to see a doctor and his medication was increased, but that made plaintiff unable to stay awake, and he would "black out in the morning in group" and was unable to work at his kitchen job. Plaintiff received disciplinary charges for falling asleep in group, and lost four (4) months' good time credit as a result. Plaintiff's family became involved and found out that Dr. O.

6

Ajumobi "did not show up on the list of certified doctors" on the Internet, but a few days later plaintiff discovered that Dr. Ajumobi no longer worked at ICCC and had been replaced by Dr. Warren. Dr. Warren explained to plaintiff that in time, plaintiff could be taken him off his previous medication, and although plaintiff's side effects began to improve, they did not disappear entirely. Plaintiff also was prescribed a special meal tray to help control his blood pressure, but he was given a disciplinary charge for being in the kitchen even though he showed "them" "the proper paperwork" regarding his special diet.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995).   To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995).  Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted.  First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).  Second, he must allege deliberate indifference to that serious medical need.

Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by

7

either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

At this juncture, it is apparent that plaintiff's claim of inadequate medical care fails to meet the requirements for an actionable Eighth Amendment violation. As to the first prong of the standard applicable to such a claim, it is doubtful that elevated blood pressure, without more, is a sufficiently serious medical need to support an Eighth Amendment violation. Cf. Cooper, 814 F.2d at 945. However, even assuming *arguendo* that plaintiff's blood pressure problem could be considered sufficiently serious to satisfy the first element of an Eighth Amendment claim, his allegations regarding the prison medical staff's efforts to treat that condition belie his assertion that defendants were deliberately indifferent to his medical needs. According to plaintiff's own account, he was seen by medical staff at ICCC on several occasions and was prescribed a number of medications in varying dosages for his blood pressure, which eventually was brought under at least partial control. These steps bespeak neither actual intent to ignore plaintiff's hypertension nor reckless disregard of that condition, cf. Miltier, 896 F.2d at 851, so an Eighth Amendment violation has not been

8

demonstrated. The apparent fact that plaintiff disagreed with the medical staff as to many of the

particulars of his treatment does not render that care actionable. Wright, 766 F.2d at 849.

Accordingly, plaintiff's claim of deliberate indifference to his serious medical needs fails to state a

claim upon which relief can be granted, and must be dismissed pursuant to § 1915A(b)(1).

(2) Library Access

As to his claim of denial of access to the law library, plaintiff asserts in the amended

complaint that upon his arrival at ICCC, he informed his counselor that he needed to use the law

library because he had an active appeal and was working on a lawsuit. The counselor told plaintiff

that plaintiff could go to the library on Thursday, which was "the usual day for the entry dorm," but

on Thursday all plaintiff could do was ask for certain books from the library to be brought to him

by other inmates. Plaintiff protested that he needed to research cases and other material, but he was

informed that he could not do so until he was promoted to the next phase of his program, which did

not occur for 54 days. Once plaintiff was able to go to the library, he "had to start [his] cases over."

Inmates have a right to meaningful access to the courts, which "can be satisfied either by

providing inmates with adequate law libraries or with adequate assistance from persons trained in

the law." Hause v. Vaught, 993 F.2d 1079, 1084 (4th Cir. 1993) (citing Bounds v. Smith, 430 U.S.

817, 822 (1977)).  To state a claim for denial of access to the courts, plaintiff must establish that the

law library or legal assistance was inadequate and that plaintiff suffered an "actual injury or specific

harm." Id. at 1084-85; see, e.g., Strickler v. Waters, 989 F.2d 1375, 1382 (4th Cir. 1993); Magee

v. Waters, 810 F.2d 451, 452-53 (4th Cir. 1987). Actual injury requires that the inmate "demonstrate

that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded."

9

<u>Jackson v. Wiley</u>, 352 F. Supp. 2d 666, 679-80 (E.D. Va. 2004).

Here, plaintiff's allegations concerning his lack of law library access state no claim for which § 1983 relief is available, because plaintiff does not allege that he sustained an actual injury as a result of the alleged deprivation. Specifically, aside from the vague declaration that he had to "start [his] cases over again," plaintiff does not claim that he was prevented from meeting deadlines or otherwise prejudiced in any pending litigation. Accordingly, plaintiff's assertion that his right of access to the courts was impaired fails to state a cognizable claim for § 1983 relief, and accordingly must be dismissed pursuant to § 1915A(b)(1).

    (3) <u>Interference with Legal Mail</u>

In his amended complaint, plaintiff alleges that his legal mail "wasn't coming in to [him]" even after he entered the "blue phase" of his institutional program. In addition, "sometimes" plaintiff's legal mail came through the regular mail, and on three occasions plaintiff "didn't even have to sign for it." On some occasions, plaintiff's legal mail had slits on the sides of the envelope, which made plaintiff wonder why they would do such a thing.

Prison officials may open mail from an attorney addressed to a prisoner only in the presence of the prisoner. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974). However, this prohibition applies only to mail clearly marked as confidential communication from a prisoner's attorney. <u>Id.</u> at 575. Furthermore, a merely negligent act of mail opening, rather than a pattern or practice of opening mail, does not rise to the level of a constitutional violation. <u>Bryant v. Winston</u>, 750 F. Supp. 733 (E.D. Va. 1990). Here, plaintiff asserts that his legal mail at times bore "slits" in the envelopes, but plaintiff has not alleged, either in his complaint or in response to the Court's direction to

particularize his complaint, that the mail was clearly marked as confidential communication from his attorney. Nor has he alleged any facts suggesting anything more than the negligent opening of some pieces of mail, rather than a pattern or practice of doing so. Thus, because plaintiff has failed to state a claim of a constitutional violation, his claim of interference with his legal mail must be dismissed, pursuant to § 1915A(b)(1).

(4) Conditions of Confinement

Plaintiff states in the amended complaint that the well water inmates must drink at ICCC posed a "danger" to him, because he had surgery for kidney stones and therefore must drink plenty of water daily, and the well water "hurt[] him" in an unspecified manner. Plaintiff also alleges that the laundry service at ICCC is inadequate, because plaintiff's laundry was lost or stolen "a number of time[s]." Plaintiff states that he was given used items, including underwear, to replace what was missing, a situation which plaintiff alleges was "cruel and unjust."

To establish a claim of cruel and unusual punishment, plaintiff must allege and prove (1) an objectively serious deprivation of a basic human need, one causing serious physical or emotional injury and (2) that prison officials acted with deliberate indifference to his needs. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (defining serious deprivation as evidence of a serious medical and emotional deterioration attributable to the challenged condition). As to the first prong, the Supreme Court has stated that "[t]he Constitution, 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citing Rhodes v.

11

Chapman, 452 U.S. 337, 347, 349 (1981)). Thus, the deprivation must result in a serious injury to the prisoner. Strickler, 989 F.2d at 1381 ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.").

Here, plaintiff alleges only in vague and conclusory terms that he was "hurt" by having to drink well water during his confinement at ICCC, and he makes no claim of injury attributable to that institution's allegedly deficient laundry service. Consequently, since plaintiff has failed to allege that he suffered injury sufficiently serious to state a claim under the Eighth Amendment as the result of the conditions of confinement he challenges, his claim of cruel and unusual punishment must be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

D. Failure to Name Defendants

Lastly, it is noted that, despite the admonition to plaintiff in the October 21 Order to describe "the specific conduct of each defendant" whom plaintiff believes responsible for the deprivations he alleges, plaintiff includes no mention whatever of named defendants Mrs. Terrangi and Dr. Jose Armus in the amended complaint. In addition, while Dr. Ajumobi is cited in the amended complaint in connection with plaintiff's claim of inadequate medical care, the sole specific factual allegation plaintiff makes with respect to that defendant is that plaintiff's relatives could not find the doctor's name on an Internet "list of certified" physicians. Thus, in addition to the substantive deficiency of plaintiff's claims, he has failed to provide sufficient factual information to establish that any of the named defendants could be held liable to him for any of the harms alleged.

12

## III.

For the foregoing reasons, plaintiff's amended complaint must be dismissed for failure to state a claim pursuant to § 1915A (b)(1). An appropriate Order shall issue.

Entered this ___8th___ day of ___September___ 2009.

Alexandria, Virginia

_____ /s/

T. S. Ellis, III
United States District Judge